FILED

PEARSON, J.

2012 MAR 30  PH 1: 16

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
UNITED STATES DISTRICT COURT GSTOWN
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10CV00021 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| HELEN STANKOVICH, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** (Resolving ECF Nos. 25, 27) |

I. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  The Flood Easement and Appraisal Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  Assignment of the Easement and 1986 Policy Change . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  Stankovich's Buildings Located on the Subject Property . . . . . . . . . . . . . . . . . . . . . 6

        1.  Home Dwelling:  Elevation 1017.18' msl . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.  Triplex Dwelling:  Elevation 1014.34' msl . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.  Three Small Storage Sheds:  Elevation all below 1016.5' msl . . . . . . . . . . . . 7

        4.  The Fill Material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

(1:10CV00021)

    A. Stankovich's Motion for Summary Judgment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       1. Ohio Revised Code § 6101.31  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       2. Ohio Revised Code § 5301.25(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           a. The Appraisal Record is Subject to Ohio Revised Code §

              5301.25(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

           b. Application of Ohio Revised Code § 5301.25(A)  . . . . . . . . . . . . . . 18

              1. Constructive Knowledge v. Actual Knowledge  . . . . . . . . . . 19

              2. Unrecorded Appraisal Record . . . . . . . . . . . . . . . . . . . . . . . . 19

              3. *Bona Fide* Purchaser . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

              4. Actual Knowledge Standard . . . . . . . . . . . . . . . . . . . . . . . . . 21

       3. Partial Abandonment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

           a. U.S.A.'s Non-Use of the Flood Easement  . . . . . . . . . . . . . . . . . . . . 24

           b. U.S.A.'s Intention to Abandon the Flood Easement . . . . . . . . . . . . . 24

    B. U.S.A.'s Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

       1. Intent of the Flood Easement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

       2. The Meaning of "Building"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30


IV. Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

(1:10CV00021)

Plaintiff United States of America ("U.S.A.") filed the present action for declaratory and injunctive relief against Defendant Helen Stankovich ("Stankovich"), requiring Stankovich to remove all structures and "fill material" from her real property over which U.S.A. owns flowage easement rights, and permanently enjoin Stankovich from locating any additional structures upon such land. ECF No. 1.

This case arises from very unfortunate circumstances. The details follow, but, in general, it suffices to say that after using property, which is indisputably located on a land subject to a U.S.A. easement, in a certain way for approximately fifty years, the property owner, Stankovich, has been told, not only that she must remove the improvements to the property, but also that the removal must be done at her cost. Understandably, both sides have strongly held positions. Plaintiff, U.S.A., among other things, is concerned about the risk of damage claims that may be brought by Stankovich against U.S.A. for losses incurred as a result of Stankovich's alleged unlawful use of property. ECF No. 1 at 3, ¶8. Defendant, the property owner Stankovich, would like to continue using her and its improvements as she has over the past fifty years without removing–at her cost or not–any of the improvements at issue. To press their positions, each party has filed motions for summary judgment seeking relief in her or its favor, respectively, against the opposing party. Hence, the Court, herein, resolves cross-motions for summary judgment.

To wit, pursuant to Fed. R. Civ. P. 56(c), Stankovich seeks judgment in her favor on U.S.A.'s claims for declaratory and injunctive relief (ECF No. 25). U.S.A. filed an opposition (ECF No. 29); to which Stankovich has replied (ECF No. 30). In parallel fashion, U.S.A. seeks

3

(1:10CV00021)

summary judgment in its favor on its own claims (ECF No. 27). Stankovich has opposed the

motion (ECF No. 28), and U.S.A. has filed a reply (ECF No. 31). For the reasons discussed

below, the motions for summary judgment are denied.

## I. Background[1]

### A. The Flood Easement and Appraisal Record

The Muskingum Watershed Conservancy District ("MWCD"), was established to provide

flood control and water conservation to the Muskingum River Basin, and, to that end, acquired a

flood easement for use in the operation of the Charles Mill Dam over land now owned by

Stankovich.[2] ECF Nos. 24 at 1; 27-1 at 10. The MWCD was originally responsible for

managing the reservoirs and dams in nineteen Ohio counties that make up the Muskingum

Watershed Area. ECF No. 27-1 at 7-8. To date, the MWCD's responsibility has been turned

over to the U.S. Army Corps of Engineers. ECF No. 27-1 at 7-8.

In 1938, the MWCD filed for record the Flood Easement in the Richland County

Recorder's Office. In pertinent part, the Flood Easement states:

> It is therefore ordered, adjudged and decreed that the title of Muskingum
> Watershed Conservancy District in and to the above described property be and the
> same is hereby confirmed and that it be admitted into immediate possession

---

[1] Parties have entered a Stipulation of Facts. ECF No. 24. This is attached as Appendix A.

[2] Stankovich received title to the subject real property pursuant to a Certificate of Transfer filed for record on January 10, 2005, from the Estate of George Stankovich, Helen Stankovich's deceased husband. ECF Nos 24 at 2; 25 at 2. George Stankovich received his title to the subject real property pursuant to a Certificate of Transfer dated October 19, 1969, from the Estate of Sam Stankovich (7/9th interest) and pursuant to Certificate of Transfer in October 1960 from the Estate of Barbara Stankovich (2/9th interest). ECF No. 24 at 2.

4

(1:10CV00021)

> thereof. For a more particular description of the rights and privileges embraced
> herein and of the building and other restrictions which may be exercised and
> enforced by the District reference is here made to the specifications regarding the
> same contained and set forth in said Appraisal Record.

ECF Nos. 25-4; 27-4.

As part of the acquisition of the Flood Easement, the MWCD prepared an Appraisal

Record. The MWCD provided $3,296.00 in exchange for the right to flood Stankovich's land

and impose certain building restrictions. ECF Nos. 25-4; 27-4. According to the Appraisal

Record, the consideration was paid:

> for the right to back water over said tract by the erection and operation of the
> dams as provided in the Official Plan with the spillways of the heights and at the
> elevations proposed in the Official Plan . . . with the right of the District to require
> the removal of all existing buildings used for dwellings that have their first floor
> elevations five feet or more lower then the spillway elevation of the reservoir in
> which the building is located and the right to require the removal of all other
> buildings that have their first floor elevations ten feet or more lower than said
> spillway elevation, and with the express understanding that no new buildings shall
> be built below said spillway elevation except by permission of the District . . . .

ECF Nos. 25-5; 27-6.

To date, the parties are unable to locate a copy of the Appraisal Record in the official

records of the Clerk of Courts for the Common Pleas Court of Tuscarawas County, Ohio or

otherwise confirm that a copy of the Appraisal Record is currently on file with the Clerk of

Courts of Tuscarawas County. ECF Nos. 24 at 4; 25 at  4; 27-1 at 9-11. Similarly, the parties

have also been unable to locate a copy of the Appraisal Record in the official records of the Clerk

of Courts for the Common Pleas Court of Richland County, Ohio or otherwise confirm that a

copy of the Appraisal Record is currently on file with the Clerk of Courts of Richland County.

ECF Nos. 24 at 4-5; 25 at  4; 27-1 at 9-11. Nonetheless, U.S.A. emphasizes that the Appraisal

5

(1:10CV00021)

Record was kept on file at the MWCD offices, where it has been available for review by the

general public. ECF No. 27-1 at 11; 27-8 at 2.

### B. Assignment of the Easement and 1986 Policy Change

By way of assignment, U.S.A. owns the flood easement rights over the land of

Stankovich as part of the comprehensive plan to provide flood control for the MWCD. ECF

Nos. 24; 27-1 at 7. U.S.A. subsequently filed the Flood Easement in the Richland County

Recorder's Office. ECF Nos. 24 at 2; 27-1 at 11.

In 1986, the Secretary of the Army authorized all structures with first floor elevations

above 1016.5' msl to remain if the structures were in place prior to August 21, 1986, and

provided that the owner of the subject property sign a "Consent to Easement Structures and

Waiver of Liability." ECF Nos. 27-1 at 12; 27-2.

### C. Stankovich's Buildings Located on the Subject Property

In light of the Flood Easement and 1986 Policy, U.S.A. alleges that Stankovich's

buildings and obstructions currently located upon the subject property are in violation of the

easement, which prohibits the construction of any buildings built below the spillway elevation of

the Charles Mill Dam. ECF No. 27-1. Consequently, U.S.A. argues that Stankovich's buildings

and obstructions in violation of the easement are subject to removal. ECF No. 27-1. The

buildings and obstructions at issue include Stankovich's home dwelling, triplex dwelling, three

small storage sheds, and "fill material."[3]

---

[3] Stankovich moved onto the subject property in 1960, and at that time the property
contained several buildings. ECF No. 25 at 2. Neither party knows the exact date that the triplex
and dwelling home were constructed; however, the parties agree that the buildings do not predate

(1:10CV00021)

### 1. Home Dwelling:  Elevation 1017.18' msl

Stankovich's home dwelling was not in existence at the time the Flood Easement was purchased in 1938.  ECF Nos. 25 at 2; 27-1 at 13.  Although the structure sits below the spillway elevations of 1020' msl, it predates the 1986 Policy change, and thus may remain provided that Stankovich signs a "Consent to Easement Structures and Waiver of Liability."  ECF No. 27-1 at 12.  By letter, the U.S. Army Corps of Engineers presented Stankovich with the agreement for her signature.  ECF Nos. 27-1 at 12; 27-11.  To date, Stankovich has refused to sign.  ECF No. 27-1 at 12.

### 2. Triplex Dwelling:  Elevation 1014.34' msl

U.S.A. explains that the triplex dwelling is not within the contestable range established by the 1986 Policy change and, therefore, must be removed at Stankovich's cost.  ECF No. 27-1 at 12.  Notably, moving the building to a higher elevation is not an option due to the high cost.  ECF No. 27-1 at 12-13.

### 3. Three Small Storage Sheds:  Elevation all below 1016.5' msl

These structures were placed on the property after the MWCD's 1938 Flood  Easement.  ECF No. 27-1 at 13.

### 4. The Fill Material

The parties' stipulate that the fill material elevation is below 1016.5' msl.  ECF No. 24 at 2.  U.S.A. alleges that there is an extensive amount of fill material on the subject property.  ECF

---

the 1938 Flood Easement.  ECF Nos. 25 at 2; 27-1 at 13.  The parties stipulate to the elevation levels described herein.  ECF No. 24 at 2.

(1:10CV00021)

No. 27-1 at 13. The fill material was brought onto the land in the mid-to late 2000s, and thus not

subject to the 1986 Policy change. ECF No. 27-1 at 13.

The parties agree that U.S.A. has the right to flood the property, and dispute whether

U.S.A. has the right to cause removal of the aforesaid buildings and obstructions that sit below

the spillway elevation of 1016.5' msl, pursuant to the Flood Easement and 1986 Policy. ECF

Nos. 25; 27-1.

## II. Legal Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions, and provides

in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a mater of law . . . .

The movant, however, is not required to file affidavits or other similar materials negating

a claim on which its opponent bears the burden of proof, so long as the movant relies upon the

absence of the essential element in the pleadings, depositions, answers to interrogatories, and

admissions on file. *Celotex*, 477 U.S. at 317.

Upon review, the Court must view the evidence in light most favorable to the non-

moving party to determine whether a genuine issue of material facts exists. *Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144 (1970); *see also White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-

44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the

lawsuit. *Anderson*, 477 U.S. at 248. Determination of whether a factual issue is "genuine"

requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the

8

(1:10CV00021)

Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. "The trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. Columbus,* 801 F.Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

The standard of review for cross-motions for summary judgment does not differ from the standard applied when one party to the litigation files a summary judgment motion. *Ferro Corp. v. Cookson Group, PLC,* 585 F.3d 946, 949 (6th Cir. 2009); *see also Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust,* 410 F.3d 304, 309 (6th Cir. 2005). Each cross-motion must be evaluated on its own merits, with the court viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Appoloni v. U.S.,* 450 F.3d 185, 189 (6th Cir. 2006). Given that backdrop, the Court will individually evaluate each party's motion on its own merits.

9

(1:10CV00021)

### III. Discussion

#### A. Stankovich's Motion for Summary Judgment

Stankovich argues that U.S.A. does not have the right to cause her to remove her buildings and fill material due to U.S.A.'s non-compliance with the Ohio Revised Code and partial abandonment of the Flood Easement with respect to the triplex. ECF No. 25 at 7-15.

##### 1. Ohio Revised Code § 6101.31

According to Ohio law, the Board of Appraisers of a conservancy district shall prepare an Appraisal Record. R.C. § 6101.31. Upon completion, the Appraisal Record:

> shall be signed by at least a majority of the board and deposited with the clerk of the court, who shall file it in the original case. At the same time, copies of that part of the report giving the appraisal of benefits and appraisals of land to be taken and of damages in any county shall be made and certified to and *filed with the clerk of the court of common pleas of that county.*

R.C. § 6101.31 (emphasis added).

Based on the undisputed fact that neither party can locate a copy of the Appraisal Record in the official records of the Clerk of Courts for the Common Pleas Court of Richland County, Stankovich argues that U.S.A. failed to file the Appraisal Record in violation of R.C. § 6101.31, and such a failure invalidates the Flood Easement. ECF No. 25 at 8-9; ECF No. 24 at 15-16.

In response, U.S.A. argues that R.C. § 6101.31 does not suggest or state that an error in recording the Appraisal Record would void the Flood Easement. ECF No. 29 at 7. U.S.A. further argues that the Ohio Revised Code makes clear that an error in the appraisal process does not serve to invalidate relevant proceedings unless that error results in a material denial of justice:

10

(1:10CV00021)

> No fault in any notice or other proceedings, whether by reason of noncompliance with the requirements of this chapter or with any applicable constitutional requirements, or otherwise, shall affect the validity of any proceeding under this chapter, except to the extent to which it can be shown that the fault resulted in a material denial of justice to the property owner or public corporation complaining of the fault.

ECF No. 29 at 7 (citing R.C. § 6101.43). U.S.A., therefore, contends that Stankovich bears the burden of showing that any alleged error in recording the Appraisal Record resulted in a "material denial of justice" with regard to the Flood Easement. ECF No. 29 at 8. In light of R.C. § 6101.43, U.S.A. explains that Stankovich has not been denied justice or prejudiced in any way by virtue of the fact that the Appraisal Record was not recorded in Richland County because: (1) it is undisputed that the Flood Easement was properly recorded in Richland County and that the easement directed Stankovich to obtain a more particular description of the building and other restrictions from the Appraisal Record; and (2) the Flood Easement specifies the book and page number for the recording of the Appraisal Record at the MWCD. ECF No. 29 at 8.

In reply, Stankovich argues that U.S.A.'s failure to record the Appraisal Record has resulted in a "material denial of justice" because U.S.A.'s failure to comply with the statute has subjected Stankovich to material costs associated with this lawsuit and the potential costs of having to tear down her buildings that have been in existence for at least fifty years. ECF No. 30 at 3-4.

A court may not decide a motion on the basis of clearly erroneous findings of fact, an improper application of the law, or an erroneous legal standard. _Schafer v. City of Defiance Police Dept._, 529 F.3d 731, 736 (6th Cir. 2008) (internal citations omitted). Stankovich's argument that U.S.A.'s failure to file the Appraisal Record in violation of R.C. § 6101.31

11

(1:10CV00021)

invalidates the properly recorded Flood Easement is unsupported by that statute and case law.

Stankovich does not identify legal support for her argument and the Court has found none.

Further, the plain statutory language in R.C. § 6101.31 does not state or suggest that an error in

recording the Appraisal Record would, as a result, void a properly filed written instrument, such

as the Flood Easement. The *gravamen* of R.C. § 6101.31 explains that the Board of Appraisers

are required to prepare and file with the conservancy court clerk a report of its findings as to the

benefits or damages or as to the value of land to be taken, which is known as the "conservancy

appraisal record."[4] Upon filing the report, the conservancy court clerk is to give notice of the

hearing on the appraisals by publication in each county in the district in which property included

in the Appraisal Record is located. *See* R.C. § 6101.32. Given that backdrop, Stankovich's

suggested interpretation of the statute is a stretch. Stankovich has improperly applied R.C. §

6101.31.

U.S.A., however, also improperly applied R.C. § 6101.43. In *In re Scioto Conservancy

District*, the Court explained that "Chapter 6101 provide[s] for notice, public hearings, and court

review of all improvements, appraisals, and assessments. R.C. § 6101.27 through § 6101.43

specifically provide for appraisals and determination of compensation for damages to property,

including the exercise of eminent domain." 108 Ohio Misc.2d 1, 11 (Ohio Com.Pl. 1999). Here,

---

[4] R.C. § 6101.31 states, in pertinent part:

When the report is completed, it shall be signed by at least a majority of the board
and deposited with the clerk of the court, who shall file it in the original case. At
the same time, copies of that part of the report giving the appraisal of benefits and
appraisals of land to be taken and of damages in any county shall be made and
certified to and filed with the clerk of the court of common pleas of that county.

(1:10CV00021)

Plaintiff filed the present action for declaratory and injunctive relief, not "compensation for

damages to property." ECF No. 1. Ohio courts have applied R.C. § 6101.43, titled "Proceedings

not invalid except when defect results in denial of justice," to court proceedings. In *Muskingum*

*Watershed Conservancy District v. Blackwell*, Appellants argued that the trial courts

confirmation hearing was invalid. 2008 WL 5403658, at *11 (Ohio App. 5 Dist. Dec. 26, 2008).

Pursuant to R.C. § 6101.43, the *Blackwell* Court held that "[w]hile we find that all of the

exceptions may not have been heard and determined at the time of the Confirmation Hearing,

s[o]me had all been heard and determined prior to approval and confirmation by the Conservancy

Court and that no 'material denial of justice' occurred." *Id.* at *12. U.S.A.'s strained

interpretation of R.C. § 6101.43 is a misapplication of the law.

### 2. Ohio Revised Code § 5301.25(A)

Ohio Revised Code § 5301.25(A) governs the recording of transfers and encumbrances of

property:

> All deeds, land contracts referred to in division (A)(2)(b) of section 317.08 of the
> Revised Code, and instruments of writing properly executed for the conveyance or
> encumbrance of lands, tenements, or hereditaments, other than as provided in
> division (C) of this section and section 5301.23 of the Revised Code, shall be
> recorded in the office of the county recorder of the county in which the premises
> are situated. Until so recorded or filed for record, they are fraudulent insofar as
> they relate to a subsequent *bona fide* purchaser having, at the time of purchase, no
> knowledge of the existence of that former deed, land contract, or instrument.

It is undisputed that the Flood Easement was properly recorded in accordance with R.C. §

5301.25(A). ECF No. 25 at 10. The parties further agree that the "Appraisal Record was not

recorded with the County Recorder in Richland County, Ohio or the County Recorder in

Tuscarawas County, Ohio." ECF No. 25-2 at 4. The parties also agree that they have been

13

(1:10CV00021)

unable to locate a copy of it's Appraisal Record in the official records of the Clerk of Courts in either Tuscarawas or Richland Counties. ECF No. 24 at 14,15.

Stankovich argues that U.S.A.'s failure to record the Appraisal Record violates R.C. § 5301.25(A), and such restrictions described in the Appraisal Record are unenforceable unless U.S.A. can "prove by clear and convincing evidence that the landowner had actual knowledge of the restriction." ECF No. 25 at 11 (citing *Emrick v. Multicon Builders, Inc.*, 57 Ohio St. 3d 107 (Ohio 1991)). Stankovich explains that in *Emrick v. Multicon Builders, Inc.*, the defendant purchased land for the purpose of constructing a shopping center, and the plaintiffs filed a declaratory action contending that the land was subject to unrecorded land restrictions prohibiting construction. ECF No. 25 at 10-11 (citing *Emrick*, 57 Ohio St. 3d at 108). The *Emrick* Court concluded that because the restrictions were unrecorded and absent from the landowner's chain of title, constructive knowledge of the restrictions is not the applicable standard; rather, the party seeking to enforce the restriction must prove by clear and convincing evidence that the landowner had actual knowledge of the restrictions. ECF No. 25 at 10-11 (citing *Emrick*, 57 Ohio St. 3d at 109). In the instant matter, Stankovich claims that U.S.A. cannot point to any evidence that Stankovich had actual knowledge of the restrictions, especially considering that the Appraisal Record does not include a spillway elevation figure. ECF No. 25 at 11.

At the outset of its reply, U.S.A. points out that R.C. § 5301.25(A) is completely silent with regard to appraisal records and does not address how an alleged error in recording such documents affects easements or easement restrictions. ECF No. 29 at 9. As such, U.S.A. argues that Stankovich fails to explain the relevance of the statute to support her argument that the Flood

14

(1:10CV00021)

Easement is not in compliance with Ohio law.  ECF No. 29 at 9.

U.S.A. further contends that Stankovich's reliance on *Emrick* is misplaced because the case is factually distinguishable.[5]  ECF No. 29 at 10.  Instead, U.S.A. relies upon case law that dictates a different result.  In *Arnoff v. Williams*, the court found that the documents incorporated by reference into the deed "had the same effect as if the agreements were set out in full in the deeds."  ECF No. 29 at 11 (citing *Arnoff*, 94 Ohio St. 145, 149 (Ohio 1916)).  Here, as in *Arnoff*, U.S.A. alleges that the building and other restrictions, although they are not spelled out with specificity in the four corners of the Flood Easement, alerts the landowner to the Appraisal Record, which does provide the specifics of the encumbrance.[6]  ECF No. 29 at 11.  In light of *Arnoff*, U.S.A. argues that the reference to the Appraisal Record in the Flood Easement is, therefore, enough to put Stankovich on constructive notice of the building and other restrictions.  ECF No. 29 at 11.

In reply, Stankovich alleges that the Appraisal Record is an encumbrance that must be recorded under R.C. § 5301.25(A).  The statute provides that all "instruments of writing properly executed for conveyance or encumbrance of land . . . shall be recorded in the office of the County Recorder of the county of which the premises is situated . . . ."  ECF No. 30 at 1-2 (citing R.C. § 5301.25(A)).  Citing to Ohio law and Black's Law Dictionary (1979), Stankovich defines

---

[5]  U.S.A. explains that *Emrick* involved a land restriction contract that was filed in the wrong county and the enforceability of the restriction with respect to the county where the subject property was situated.  ECF No. 29 at 11.

[6]  U.S.A. fails to mention that not even this Appraisal Record fully explains the land use restriction, *etc.*

(1:10CV00021)

encumbrance as "any right to, interest in land which may subsist in another to diminution of its value, but consistent with the passing of the fee; a claim, lien, charge or liability attached to and binding upon real property . . . ." ECF No. 30 at 2. Stankovich argues that the Appraisal Record is an encumbrance on the land because the restriction on constructing buildings constitutes "an interest on the land which creates a diminution of its value to the landowner." ECF No. 30 at 2. Because the restriction falls within the purview of R.C. § 5301.25(A), Stankovich argues that the Appraisal Record must have been recorded in the chain of title. ECF No. 30 at 2.

The Court now considers the allegations step-by-step in order to determine whether summary judgment is appropriate.

### a. The Appraisal Record is Subject to Ohio Revised Code § 5301.25(A)[7]

As previously stated, R.C. § 5301.25(A) states, in pertinent part, that "[a]ll deeds, land contracts referred to in division (A)(2)(b) of section 317.08 of the Revised Code, *and* instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments . . . shall be recorded in the office of the county recorder of the county in which the premises are situated . . . ."[8] (emphasis added).

U.S.A. argues that the County Recorder would have no authority to record the Appraisal

---

[7] General Code § 8543 was the predecessor to R.C. § 5301.25(A) and was in effect during 1938 and 1941, the time of the easement and the assignment of the easement. *See* WILLIAM H. PAGE, PAGE'S OHIO GENERAL CODE ANNOTATED, 48 (6th ed. 1938).

[8] Ohio Revised Code § 317.08(A)(2)(b) includes "[a]ll executory installment contracts for the sale of land executed after September 29, 1961, that by their terms are not required to be fully performed by one or more of the parties to them within one year of the date of the contracts."

16

(1:10CV00021)

Record because the County Recorder can only record instruments that are specified in the statute, and R.C. § 317.08 does not mention Appraisal Records much less contain a provision for recording this particular instrument. ECF No. 29 at 9; *see Ramsey v. Riley*, 13 Ohio 157, 166-67 (1884) ("[I]f the instrument is not such as the law authorizes to be recorded, the act of recording is a nullity, and the plaintiff should have disregarded it."). Conversely, Stankovich argues, relying upon an Ohio Appellate Court's ruling in *October Hill Camplot Owners Assoc. v. Kitchen*, Case No. 88891, 2007 Ohio App. LEXIS 3840 (Ohio App. 8 Dist. Aug. 23, 2007), that the Appraisal Record is an encumbrance and, therefore, must be recorded in accordance with R.C. § 5301.25(A). ECF No. 30 at 2.

The Court disagrees with U.S.A.'s position for several reasons. The Supreme Court of Ohio has applied R.C. § 5301.25(A) to written instruments not specified in the statute. For example, the statute does not explicitly include mortgages; however, the Supreme Court of Ohio held that R.C. § 5301.25(A) applies to mortgages in *Citizens National Bank in Zanesville v. Denison*, when it stated that "[a] mortgage . . . is not properly executed in accordance with the provisions of Section 5301.01, Revised Code, and is not entitled to record under Section 5301.25, Revised Code, and the recording thereof does not constitute constructive notice to subsequent mortgagees, where there is a failure to follow the statutory requirements . . . ." *Denison*, 165 Ohio St. 89, 90 (1956).

Disregarding the instrument's entitled "Appraisal Record," the content of the document describes or imposes an encumbrance. According to Ohio law, an encumbrance is "[a]ny right to, or interest in, land which may subsist in another to diminution of its value, but consistent with

17

(1:10CV00021)

the passing of the fee by conveyance . . . ." *Dietl v. Sipka*, 185 Ohio App.3d 218, 222 (Ohio App. 11 Dist. 2009) (internal citations omitted). The Appraisal Record's restriction to construct buildings "may" create a diminution of the land's value because the restrictions prohibit the right to construct buildings and a violation of such restrictions result in the removal of Stankovich's existing buildings. *See* ECF Nos. 25-5; *see also Swango Homes, Inc. v. Columbia Gas Transmission Corp.*, 806 F.Supp.180, 184 (S.D. Ohio 1992) (describing "diminution in value" as decreased property value).

Further, Ohio precedent explains that "[b]uilding restrictions are encumbrances upon real estate." *Egle v. Morrison*, 17 Ohio C.D. 497 (Ohio Cir. Ct. 1904) (internal citations omitted). The Flood Easement did not specifically include the building restrictions, but rather instructed the reader to the Appraisal Record "[f]or a more particular description of . . . the building and other restrictions . . . ." ECF No. 25-4. The Appraisal Record plainly includes land use and building restrictions such as: (1) the required removal of all existing buildings used for dwellings that have their first floor elevations five feet or more lower then the spillway elevation of the reservoir in which the building is located; (2) the right to require the removal of all other buildings that have their first floor elevations ten feet or more lower than said spillway elevation; and, (3) the express understanding that no new buildings shall be built below said spillway elevation except by permission of the District. ECF No. 25-4. The Appraisal Record is, therefore, an encumbrance subject to R.C. § 5301.25(A).

### b. Application of Ohio Revised Code § 5301.25(A)

Turning now to the applicable notice standard, the Supreme Court of Ohio explained that

18

(1:10CV00021)

pursuant to R.C § 5301.25(A), "a *bona fide* purchaser for value is bound by an encumbrance upon land only if he has constructive or actual knowledge of that encumbrance." *Tiller v. Hinton*, 19 Ohio St.3d 66, 68 (1985).

### 1. Constructive Knowledge v. Actual Knowledge

In *Thames v. Asia's Janitorial Serv., Inc.*, the Supreme Court of Ohio explained that "the *proper recording* of those instruments referenced in R.C. 5301.25(A) serves as constructive notice of that interest or encumbrance . . . [and] [s]uch notice, in this statutory sense, is constructive because the subsequent [*bona fide*] purchaser is deemed to have notice of the record whether he reviewed it or not." 81 Ohio App.3d 579, 587 (Ohio App. 6 Dist. 1992) (emphasis added) (internal quotations omitted).  On the other hand, "where the instrument of conveyance is one that is subject to R.C. 5301.25(A) and is *not properly recorded*, 'an actual knowledge standard must be applied.'"  *Id*. (emphasis added) (citing *Emrick*, 57 Ohio St.3d at 109). Specifically, the Supreme Court of Ohio held that "[a]n unrecorded land use restriction is not enforceable against a *bona fide* purchaser for value unless the purchaser has actual knowledge of the restriction." *Emrick*, 57 Ohio St.3d at 110.

In the instant matter, the facts support a finding that an "actual knowledge" standard applies because, in every way relevant, the instrument of conveyance (*i.e.*, the Appraisal Record) was unrecorded and Stankovich is a *bona fide* purchaser.

### 2. Unrecorded Appraisal Record

The parties' stipulate that "[t]he Appraisal Record was not recorded with the County

19

(1:10CV00021)

Recorder in Richland County, Ohio or the County Recorder in Tuscarawas County, Ohio."[9] ECF No. 25-2; ECF No. 24 at 15-16.

### 3. *Bona Fide* Purchaser

The record further reflects that Stankovich is a *bona fide* purchaser under Ohio law.[10] "A *bona fide* purchaser is one who acquires legal title to real estate for valuable consideration, in good faith, and without knowledge or notice of another's equitable interest in that property." *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 477 (Ohio App. 7 Dist. 2010) (internal citations and quotations omitted). However, "[a] person who acquires title by gift or inheritance does not have the rights of a *bona fide* purchaser *except* to the extent that his predecessor in title had such rights." *Id.* (emphasis added). Here, the property at issue was purchased by Stankovich's now deceased in-laws Samuel and Barbara Stankovich from MWCD in 1954. ECF No. 25 at 2. The deed transferring the property to Samuel and Barbara Stankovich provides that it was purchased "in consideration of the sum Ten Dollars and other valuable considerations to it paid" and without notice with another's equitable interest in the property. ECF Nos. 25 at 2; 25-1 at 1 ("[T]he title is CLEAR, FREE, and UNCUMBERED . . . ."). The property at issue was then transferred to Stankovich by inheritance. ECF No. 25 at 2, 13. As a result, Stankovich takes title of the property with the same rights and obligations as her predecessors in title who did made a

---

[9] Similarly, in *Emrick*, "[n]either side dispute[d] that the Restriction Contract was not recorded in Delaware County when Multicon purchased its property." *Emrick*, 57 Ohio St.3d at 109.

[10] The Supreme Court of Ohio held that the purpose of R.C. § 5301.25(A) is to protect subsequent *bona fide* purchasers of property. *See Basil v. Vincello*, 50 Ohio St.3d 185, 190 (1990) (citing *University Hills, Inc. v. Patton*, 427 F.2d 1094, 1100 (6th Cir. 1970)).

(1:10CV00021)

*bona fide* purchase of the property. *See* ECF No. 25-2 at 1-2. Stankovich, therefore, qualifies as

a *bona fide* purchaser of the property for purposes of R.C § 5301.25(A).

#### 4. Actual Knowledge Standard

The case law relied upon by U.S.A. does not demand a contrary result. The Court does

not dispute the rules that U.S.A. cites to, but rather finds the rules inapplicable in this instance.

U.S.A. cites to *Arnoff* in support of its proposition that a constructive notice standard applies. In

*Arnoff*, the Court reasoned that a written agreement containing building restrictions that was

neither "attested by witnesses or acknowledged according to law" is not entitled to be recorded,

and its recording is without legal effect and does not operate as constructive notice; however, if

the agreement is incorporated by reference in the properly recorded deed within the recipient of

the property chain of title, the recipient of the property is put on notice of the restrictions and

bound by them.[11] 94 Ohio St. at 148-49. Drawing a parallel to *Arnoff*, U.S.A. asserts that

"Stankovich had constructive notice of the encumbrance because the Appraisal Record was

incorporated by reference into the Flood Easement." ECF No. 29 at 11. The Court is

unpersuaded by U.S.A.'s position because the Supreme Court of Ohio interpreted R.C. §

5301.25(A) and held that "[w]hen the document containing the restriction is unrecorded, an

actual knowledge standard must be applied."[12] *Emrick, 57 Ohio St.3d at 109*. Specifically, the

---

[11] Contrary to *Arnoff*, the Appraisal Record is entitled to record–that is, the Appraisal Record is an encumbrance subject to the recording provisions described in R.C. § 5301.25(A).

[12] In *Emrick*, landowners in Delaware County sought to enforce the terms of an unrecorded agreement for restrictive covenants against the purchaser of a tract who claimed to be without notice of the terms of the agreement. *Emrick, 57 Ohio St.3d at 107-08*. The Supreme Court held that the purchaser was not bound by it, despite evidence that the purchaser had

(1:10CV00021)

*Emrick* Court reasoned that the lower courts had erroneously applied a "constructive notice" rather than an "actual knowledge" test in denying the purchaser the protection afforded by the provisions of R.C. § 5301.25(A). *Id.* at 110. As a result, the *Emrick* Court remanded the case to the trial court and explained:

> An unrecorded land use restriction is not enforceable against a *bona fide* purchaser for value unless the purchaser has actual knowledge of the restriction. Although actual knowledge in some instances may be inferred, it may not be imputed to the purchaser on the basis of mere familiarity with the land use restriction recorded in another county, or on the basis of awareness of the bare existence of the document containing the restrictions.

*Id.*

The *Emrick* Court went on to hold that the party seeking to enforce the unrecorded restriction must prove by clear and convincing evidence that the landowner had "actual knowledge of the restriction at the time of purchase." *Id.* at 109. Actual knowledge requires clear and convincing proof that Stankovich "knew" that the restrictions apply to the land. *Id.* at 109. Therefore, a "should have known" or "could have known" test is inappropriate. *Id.* at 111.

Applying the above analyses to the instant matter, the Court finds that it must be shown, by clear and convincing evidence, that Stankovich had actual knowledge of the encumbrance, the restrictions on the use of her property. U.S.A. is required to show by clear and convincing evidence that Stankovich had actual knowledge of the restrictions on land use and building. U.S.A. argues that the land and building restrictions were referenced in the properly recorded Flood Easement, without addressing the actual knowledge standard. ECF No. 29. Instead of

---

knowledge of the existence of the agreement through dealings with properties in adjoining Franklin County that were covered by the restrictions. *Id.* at 108-09.

22

(1:10CV00021)

applying the "actual knowledge" standard, U.S.A. inappropriately applies a "should have known"

or "could have known" test.  ECF No. 29 at 10-11.

When determining "actual knowledge," the *Emrick* Court instructs courts to consider the

"circumstances" surrounding "actual knowledge." *Id.* at 110 (citing *Morris v. Daniels*, 35 Ohio

St.406, 416 (1880)).  In her motion for summary judgment, Stankovich explains such

"circumstances" as follows:

> In late 1974 and early 1975, the Defendant and her late husband upgraded the
> Triplex from a one-unit apartment to a three (3) unit apartment. []  This project
> was financed with a loan, which was guaranteed by Plaintiff. []  As part of the
> loan process, the Plaintiff was actually notified of the flood easement and
> responded by verifying that the existence of the flood easement would not
> 'materially affect the value of the property for the purpose for which it is to be
> used.' []  The Plaintiff materially participated in the remodel of a building which
> it now contends must be removed. *The Defendant understandably presumed that
> the Plaintiff had abandoned its easement with respect to this Triplex because it
> guaranteed repayment of a loan for its remodel.*

ECF No. 25 at 14 (emphasis added).  Stankovich's presumption that U.S.A.'s guaranteed

payment was evidence of an abandonment of the easement restrictions creates a reasonable

inference that she had "actual knowledge" of the restrictions prior to upgrading the triplex

apartment building.  In light of Stankovich's presumption, the issue of "actual knowledge"

cannot lend itself to a summary disposition because drawing factual inferences are functions

reserved for the jury, and thus there is no opportunity to grant summary judgment as a matter of

law. *See Anderson*, 447 U.S. at 255.  Therefore, the evidence present in the record suggests that

a genuine issue of material fact exists as to whether there is clear and convincing evidence that

Stankovich had actual notice of the restrictions.

23

(1:10CV00021)

### 3. Partial Abandonment

Stankovich argues that U.S.A. has partially abandoned the easement with respect to the triplex dwelling. ECF No. 25 at 13-15. Stankovich explains that an easement may be abandoned by demonstrating: (1) non-use of the easement for a long period of time, and (2) an intention to abandon the easement evidenced by decisive unequivocal acts inconsistent with continued use and enjoyment of the easement. ECF No. 25 at 13.

#### a. U.S.A.'s Non-Use of the Flood Easement

As to the first element, non-use, Stankovich argues that U.S.A. did not enforce the Flood Easement for approximately fifty years as it relates to the construction, existence and use of the triplex. ECF No. 25 at 13-14.

#### b. U.S.A.'s Intention to Abandon the Flood Easement

With respect to the second element, intention to abandon, Stankovich claims that a loan to remodel the triplex dwelling guaranteed by U.S.A. through the U.S. Department of Veterans Affairs ("VA") demonstrates a decisive unequivocal act to partially abandon the easement. ECF No. 25 at 14. As previously explained, Stankovich and her late husband obtained a loan to remodel the single apartment triplex dwelling into three apartments. ECF No. 25 at 4-5. As part of the loan guarantee process, U.S.A. was notified by letter from the title company of the flood easement and asked whether the easement would affect the value of the property and the proposed remodel. ECF No. 25 at 4-5. It is undisputed that in response to an inquiry from the title company about the easement, that the Veterans Administration "stamped on the bottom part of the letter []: 'It has been determined that the existence of the indicated limitation(s) of the

24

(1:10CV00021)

quantum or [illegible] of the property of estate appraised does not materially affect the value of the property for the purpose of which it is to be used.'" ECF No. 25-2 at 4. Stankovich believed, as described above, that U.S.A. abandoned the easement with respect to the triplex "because it guaranteed repayment of a loan for its remodel." ECF No. 25 at 14. Stankovich, therefore, argues that U.S.A.'s actions constitute decisive and unequivocal acts inconsistent with the continued use and enjoyment of the easement in relation to the triplex dwelling. ECF No. 25 at 14.

U.S.A. contends that Stankovich's argument fails because it is well established that the United States cannot abandon a property interest without Congressional authorization. ECF No. 29 at 12. U.S.A. states that Congress, through the United States Constitution, holds the power to dispose of the rights and property of the United States. ECF No. 29 at 12 (citing U.S. Const. Art. IV, § 3, cl. 2). U.S.A. elaborates that a government officer, in this instance the VA loan officer, has no power to release or dispose of the United States' property interest without the United States' authorization. ECF No. 29 at 12. U.S.A. emphasizes that the U.S. Army Corps of Engineers letter explains that the VA loan determination only related to the "internal actions of the VA concerning [the] loan . . . [and] had no effect of the action of other federal agencies or the validity of the flowage easement. The Corps is the only agency that has the jurisdiction to give permission for structures to be erected on easement property." ECF Nos. 29 at 13; 29-1.

Alternatively, U.S.A. argues that Stankovich cannot demonstrate that U.S.A. has abandoned its property interest in the easement under Ohio law because Stankovich cannot show both the intent to abandon and corresponding actions to effectuate that intent. ECF No. 29 at 13.

25

(1:10CV00021)

U.S.A. disputes Stankovich's non-use argument by explaining that the U.S. Army Corps of Engineers continues to use the Flood Easement when necessary. ECF No. 29 at 14. U.S.A. further re-emphasizes that the appraisal of Stankovich's land to obtain a VA loan does not counsel against certain land uses because a VA loan has no bearing on the Flood Easement. ECF No. 29 at 15. In support of its argument, U.S.A. cites to a variety of letters notifying Stankovich that the Flood Easement and the U.S. Army Corps of Engineers' intended to retain its property interest. ECF No. 29 at 15.

In reply, Stankovich contests U.S.A.'s argument that the VA has no authority to abandon the easement by stating that "[t]here is only one United States of America [and] [r]egardless of its many departments and functions, it is only one entity and this entity represented to the defendant that it would guarantee her loan to remodel the triplex it now contends must be torn down." ECF No. 30 at 4.

The Court is not persuaded that U.S.A. abandoned the easement. In order to show abandonment, Stankovich must establish "(1) nonuse of the easement and (2) an intent to abandon the easement." *Penn v. Esham*, 177 Ohio App.3d 201, 206 (Ohio App. 4 Dist. 2008) (citing *Crane Hallow, Inc. v. Marathon Ashland Pipe Line, L.L.C.*, 138 Ohio App.3d 57, 72 (2000)). Non-use of the easement alone is "generally insufficient to establish abandonment." *Penn*, 177 Ohio App.3d at 206. Further, intent to abandon the easement "must be established by unequivocal and decisive acts inconsistent with the continued use and enjoyment of the easement." *Id*. (internal citations omitted). Stankovich has not shown "unequivocal and decisive acts" indicative of abandonment even though the easement was in non-use for a period of time.

26

(1:10CV00021)

Stankovich's argument that the Department of Veteran Affairs' loan to remodel the triplex

apartments and representation that the Flood Easement would have no effect on the value of the

triplex constitutes abandonment is not viable. *See* ECF Nos. 25-7; 30 at 4-5. The U.S. Supreme

Court has explained that subordinate officers of the United States are without power to release or

dispose of the United States' property rights, unless "it has been conferred upon them by Act of

Congress or is to be implied from other powers so granted." *Royal Indemnity Co. v. U.S.*, 313

U.S. 289, 294 (1941). Here, the Department of Veteran Affairs is a subordinate to the U.S. Army

Corps of Engineers responsible for appraising the value of the property, while the U.S. Army

Corps of Engineers "is the only agency that has the jurisdiction to give permission for structures

to be erected on easement property." ECF No. 29 at 13; *Royal Indemnity Co.*, 313 U.S. at 294

("Collectors of internal revenue are subordinate officers charged with the ministerial duty of

collecting the taxes."). There is no statute granting the Department of Veteran Affairs the

authority to abandon U.S.A.'s easement absent an act of Congress, nor does the record indicate

an implication to do so. Absent proof of an intent to abandon, the representations made by the

Department of Veteran Affairs do not constitute abandonment. Stankovich's efforts to show

abandonment are further weakened by the series of letters U.S.A. sent to Stankovich during the

1980s and 1990s regarding the enforcement of the Flood Easement. ECF No. 29-1; 29-2; 29-3;

29-4; 29-5; 29-6. U.S.A.'s letters demonstrate unequivocal and decisive acts *consistent* with the

continued use and enjoyment of the easement, rather than inconsistent.

27

(1:10CV00021)

### B. U.S.A.'s Motion for Summary Judgment[13]

U.S.A. argues that Stankovich was given constructive notice that the property is subject to building restrictions and, therefore, U.S.A. has the right to demand the removal of Stankovich's non-conforming buildings and obstructions pursuant to the Flood Easement. ECF No. 27-1 at 15-18. U.S.A. further argues that the fill material must be considered a "building" in order to prevent Stankovich from circumventing the Flood Easement's spillway elevations by using such material. ECF No. 27-1 at 18-21. To avoid redundancy, the Court incorporates the discussion above. Obviously, the analysis and ruling on constructive notice and its inapplicability are relevant here.

The Court will now address the issue of whether the fill material is a building.

The parties' stipulate that the fill material elevation is below 1016.5' msl. And, U.S.A. has categorized the fill material as a "building" and seeks its removal in alleging it is violation of the Flood Easement. ECF Nos. 21-7 at 20; 27-5 at 2. U.S.A. argues that it is entitled to summary judgment according to the intent and purpose of the Flood Easement coupled with the ambiguous meaning of "building" so as to allow for the inclusion of "fill material" in its definition. ECF No. 27-1 at 18-21.

---

[13] U.S.A. seeks: (1) a declaratory judgment that the building restrictions contained in the Flood Easement and Appraisal Record are enforceable against Stankovich; (2) injunctive relief requiring Stankovich to remove, at her costs, the triplex dwelling, three small storage sheds, and fill material; and, (3) an order requiring Stankovich to remove her home dwelling unless Stankovich signs the Consent to Easement Structures and Waiver of Liability form. ECF No. 27-1 at 22.

(1:10CV00021)

## 1. Intent of the Flood Easement

In *Crane Hallow, Inc. v. Marathon Ashland Pipe Line, L.L.C.*, the Supreme Court of

Ohio explained that a "court must interpret a contract so as to carry out the intent of the parties."

138 Ohio App.3d 57, 73 (2000).  Relying on Gary Baxter's deposition testimony, U.S.A. alleges

that the intent and purpose of the easement was to provide U.S.A. with storage capacity in the

reservoir so that it can back up water during times of heavy rains and floods.[14]  ECF Nos. 27-1 at

18-19; 27-2 at 2-3.  U.S.A. continues to explain that the placement of the fill material in the

easement area takes up valuable storage capacity, and thus, severely interferes with and is in

violation of its Flood Easement.  ECF No. 27-1 at 19.

In reply, Stankovich challenges U.S.A.'s alleged "intent and purpose" of the Flood

Easement by highlighting a different portion of Gary Baxter's deposition testimony.  ECF No. 28

at 5-6.  Gary Baxter testified that "[w]e allow certain things to be built in the easement area if it

benefits the general public such as a baseball dugout, things like that . . . Ashland University was

issued a consent for easement to build an outdoor facility of some sort to go and work with

school children."  ECF No. 28-1 at 1-2.  In light of Gary Baxter's testimony, Stankovich argues

that U.S.A.'s argument to remove Stankovich's buildings that encroach upon valuable storage

capacity is "less credible when it admittedly has a separate policy allowing public institutions and

entities [] do what it claims should not be done–construct buildings and use materials to take up

the easement area."  ECF No. 28 at 6.

---

[14]  Gary Baxter is employed as a Realty Specialist, Hunting District, U.S. Army Corps of Engineers, Huntington, West Virginia.  ECF No. 27-2 at 1.

(1:10CV00021)

U.S.A. responds by pointing to the standard operating procedure (ECF No. 31-1) and argues that the policy demonstrates that the U.S. Army Corps of Engineers has established a delicate balance to allow for public construction within easement areas only when legitimate public needs are present, and those public needs cannot be met outside of easement areas. ECF No. 31 at 9. U.S.A., additionally, explains that safety and other precautions are incorporated into the construction and design of the facility. ECF No. 31 at 9.

The Supreme Court of Ohio gives effect to the parties intent "at the time the contract was made." *Crane Hallow, Inc.*, 138 Ohio App.3d at 74; *see also U.S. v. Tri-State Group, Inc.*, Case No. 10-3111, 2011 WL 1522451, at *1 (6th Cir. April 22, 2011). The parties involved at the time the Flood Easement was made include the MWCD and the landowners, Alice and Chas. Simpson. ECF No. 27-5 at 3. Gary Baxter's deposition testimony states that there is nothing in the Flood Easement language that would make a distinction between private citizen and public entity in terms of encroachment, and that such a policy belongs to the U.S. Army Corps of Engineers. ECF No. 28-1 at 3. The U.S. Army Corps of Engineers was not a party at the time the Flood Easement was made, nor is the U.S. Army Corps of Engineers' Private Citizen and Public Entity Policy reflected in the Flood Easement. Contrary to Stankovich's position, the record reflects that the Flood Easement's purpose is to provide storage capacity to back up water during times of heavy rains and floods. ECF No. 28-1 at 2-3.

### 2. The Meaning of "Building"

The Sixth Circuit explained that "[w]hat matters [] is not what 'building' means today, but what it meant when the original parties signed their agreement . . . ." *Tri-State Group, Inc.*,

30

(1:10CV00021)

2011 WL 1522451 at *1. In *Tri-State Group, Inc.*, the easement granted the government "the

right to 'back water up to and over' the property, to an elevation of 962' msl, and to require the

removal of, and consent before the construction of, any 'building' within the easement." *Id*. The

subject property contained two oil-storage tanks and separators, and the government sued to

compel the defendant to remove the tanks and separators. *Id*. The Sixth Circuit looked to what

"building" meant when the original parties signed their agreement in 1939. *Id*. Specifically, the

Sixth Circuit explained:

> In 1903, an Ohio court explained that: 'In law, anything erected by art, and fixed
> upon or in the soil, composed of different pieces connected together, and designed
> for permanent use in the position in which it is so fixed, is a building.' *Univ. of
> Cincinnati v. Cincinnati*, 1 Ohio N.P. (n.s.) 105, at *5 (Ohio Super.1903)
> (emphasis in original) (quoting the Century Dictionary). And in 1936, an Ohio
> court considered various definitions of 'building,' including 'a structure,' 'that
> which is built,' and 'an edifice for any use.' *Kern v. Murph*, 6 Ohio Op. 223, at
> *2 (Ohio Com.Pl.1936).

*Id. at *2*. Employing this guidance, the Court held that the "oil tanks and separators here easily

fall within these broad definitions of 'building.'" *Id*.

In accordance with the Flood Easement's purpose to provide storage capacity in the

reservoir, U.S.A. argues that the placement of the fill material in the easement area takes up

valuable storage capacity, and, therefore, severely interferes with the Flood Easement. ECF No.

27-1 at 19. U.S.A. analogizes "fill material" to dirt or an earth filling. ECF No. 27-1 at 21.

U.S.A. directs the Court to consider "building" not in the narrow sense, but rather to include any

obstructions such as fill material that would defeat the intent and purpose of the Flood Easement.

ECF No. 27-1 at 20. U.S.A. also points out that according to the American Law Reports, "there

is a strong tendency on the part of the courts to construe the term 'building,' as used in restrictive

31

(1:10CV00021)

covenants, with a view toward giving effect to the manifest intent and purposes of the parties."
ECF No. 27-1 at 19-20; (citing C.D. Sumner, *What Constitutes a "Building" Within Restrictive*
*Covenant*, 18 A.L.R. 3d 850 § 2 (1968)).

The Court finds that fill material, an earth filling fixed upon or in the soil designed for
permanent use to meet the spillway elevation level, falls within the broad definition of
"building," which is consistent with the purpose of the Flood Easement. Summary judgment,
however, is denied because the Court previously held that the Appraisal Record, the unrecorded
encumbrance permitting the removal of such buildings, is not enforceable. U.S.A., therefore, is
not entitled to injunctive relief requiring Stankovich to remove, at her expense, the fill material.
ECF No. 27-1 at 22.

### IV. Conclusion

The Court has found that actual, not constructive notice of the restrictions referenced in
the easement, is required. There remains, however, a genuine issue of material fact as to whether
there is clear and convincing evidence that Stankovich had actual notice of the restrictions.

Additionally, the Court has found that the fill material is a building and the U.S.A. has
not abandoned the easement.

For the above reasons, the Court denies both Defendant Helen Stankovich's Motion for
Summary Judgment (ECF No. 25) and Plaintiff United States of America's Motion for Summary
Judgment (ECF No. 27).

A final pre-trial conference will take place on September 5, 2012 at 10:30 a.m. The trial
shall begin on September 24, 2012 at 9:00 a.m. The trial is scheduled on a two week stand-by

32

(1:10CV00021)

basis, and will take place in Courtroom 351, United States Courthouse, 125 Market Street,

Youngstown, Ohio.

.

IT IS SO ORDERED.

3/30/2012

Date

Benita Y. Pearson
United States District Judge
33